JOURNAL ENTRY AND OPINION
{¶ 1} Defendant appeals his convictions[1] and sentences for voluntary manslaughter, aggravated burglary, aggravated robbery, and kidnapping.
 {¶ 2} The state's witnesses presented the following account. At 4:30 a.m. on April 17, 2001, Cleveland police officers responded to a call at the residence located at 1723 Burgess Avenue. Once inside the home, the officers discovered the body of Lori Crawford. She was lying in a pool of blood with her legs bound by an appliance cord. An autopsy established that Crawford had suffered 22 blunt impact blows to her head, 11 stab wounds, and strangulation. Crawford's death was ruled a homicide by the Cuyahoga County Coroner's Office.
 {¶ 3} The day before she was murdered, Crawford, defendant, and a man named Dennis Johnson were at Gayle Solomon's crack house. In exchange for drugs, Crawford and defendant were selling items taken from the house where Crawford was living.[2]
Defendant told Johnson and Sims that he wanted to have someone to go to Crawford's to take other items so he could sell them for drugs. That night, defendant was getting high at a friend's house when he met Larry Porter.
 {¶ 4} Porter was already high and about to leave when defendant asked him for a ride to his girlfriend's. Defendant told him he needed a ride because he and his girlfriend had broken up and he wanted to get some things he had left at her house. Porter agreed to give defendant a ride.
 {¶ 5} Through the course of that night and the early morning hours of the next day, the two men made four stops. At their first stop, the two men got high. The second stop was at Crawford's where they arrived approximately between 9:00 p.m. and 10:00 p.m. Porter sat in the car and waited "[s]omewhere around 15 minutes" before defendant returned. The two men left to get cigarettes. Porter drove defendant to a local supermarket. When defendant returned to the car, he showed Porter the packs of cigarettes he had stolen. The two men then drove to another location where defendant sold the stolen cigarettes for crack cocaine.
 {¶ 6} They returned to Crawford's and defendant went inside. While Porter waited in the car, defendant removed a "DVD player or CD and a telephone" from the house. Porter also helped defendant remove a television from the landing leading to the second floor of the house. Porter noticed defendant was "edgy" when he returned to the car. Porter drove defendant to Gayle Solomon's, where defendant sold the items taken from Crawford's for "drugs and money." Porter estimated the time to be around 5:00 a.m. One of Crawford's friends discovered her body around 3:15 a.m.
 {¶ 7} Following a police investigation, defendant was arrested. He pled not guilty to Crawford's murder and other related offenses. After the state rested its case, defendant made a Crim.R. 29 motion for acquittal, which the trial court denied. Defendant did not present any defense witnesses. Defendant was convicted and sentenced to nine years on the manslaughter conviction and four years on each of the remaining convictions. Defendant's sentences were ordered to be served consecutively for a total prison term of twenty-one years.[3]
 {¶ 8} He was granted leave to file a delayed appeal in this court. Defendant presents the following seven assignments of error for review. Because defendant's first two assignments of error are related, they are addressed together.
The trial court erred in denying appellant's motion foracquittal as to the charges when the state failed to presentsufficient evidence that appellant was culpable.
 Appellant's convictions are against the manifest weight of theevidence.
 {¶ 9} Defendant argues the state's evidence against him was not credible and, therefore, insufficient because it was elicited from "crack addicts and convicted felons." Defendant's brief on appeal, p. 18. Defendant also argues that the manifest weight of the evidence does not support the jury's verdict against him.
 {¶ 10} Crim.R. 29(A) governs motions for acquittal and provides for a judgment of acquittal "if the evidence is insufficient to sustain a conviction * * *." Crim.R. 29. "An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. A verdict will not be disturbed on appeal unless reasonable minds could not reach the conclusion reached by the trier of fact." State v. Watts, Cuyahoga App. No. 82601, 2003-Ohio-6480, citing State v. Jenks (1991),61 Ohio St.3d 259, 273, 574 N.E.2d 492. Sufficiency is a test of adequacy. State v. Thompkins (1997), 78 Ohio St.3d 380,386-387, 1997 Ohio 52, 678 N.E.2d 541.
In considering a manifest-weight claim, a court, reviewing theentire record, weighs the evidence and all reasonable inferences,considers the credibility of witnesses and determines whether inresolving conflicts in the evidence, the jury clearly lost itsway, and created such a manifest miscarriage of justice that theconviction must be reversed and a new trial ordered. Thediscretionary power to grant a new trial should be exercised onlyin the exceptional case in which the evidence weighs heavilyagainst the conviction.
 {¶ 11} State v. Braden, 98 Ohio St.3d 354, 2003-Ohio-1325,785 N.E.2d 439, at ¶ 54.
 {¶ 12} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `"`thirteenth juror'"' and disagrees with the factfinder's resolution of the conflicting testimony."State v. Thompkins (1997),78 Ohio St.3d 380, 387, citing Tibbs v. Florida (1982) 457 U.S. 31, at 42.
 {¶ 13} In the instant case, defendant was convicted of voluntary manslaughter, aggravated burglary, aggravated robbery, and kidnapping. R.C. 2903.03(A) defines "voluntary manslaughter" as follows:
No person, while under the influence of sudden passion or in asudden fit of rage, either of which is brought on by seriousprovocation occasioned by the victim that is reasonablysufficient to incite the person into using deadly force, shallknowingly cause the death of another * * *.
 {¶ 14} Before charging a jury on the offense of voluntary manslaughter, the trial court must determine "whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant such an instruction." State v. Shane
(1992), 63 Ohio St.3d 630, 590 N.E.2d 272, paragraph one of the syllabus. "For provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." Id. at 635, 590 N.E.2d 272."State v. Braden, 98 Ohio St.3d 354, 2003-Ohio-1325,785 N.E.2d 439, at ¶¶ 67 and 68.
 {¶ 15} R.C. 2911.11(A)(1) defines aggravated burglary, in relevant part, as follows:
No person, by force, stealth, or deception, shall trespass inan occupied structure or in a separately secured or separatelyoccupied portion of an occupied structure, when another personother than an accomplice of the offender is present, with purposeto commit in the structure or in the separately secured orseparately occupied portion of the structure any criminaloffense, if any of the following apply:
 The offender inflicts, or attempts or threatens to inflictphysical harm on another * * *.
Aggravated robbery is defined in R.C. 2911.01(A):
No person, in attempting or committing a theft offense, asdefined in section 2913.01 of the Revised Code, or in fleeingimmediately after the attempt or offense, shall do any of thefollowing:
 Have a deadly weapon on or about the offender's person orunder the offender's control and either display the weapon,brandish it, indicate that the offender possesses it, or use it;
Have a dangerous ordnance on or about the offender's person orunder the offender's control;
Inflict, or attempt to inflict, serious physical harm onanother.
 {¶ 16} R.C. 2905.01(A) defines kidnapping as follows:
No person, by force, threat, or deception, or, in the case ofa victim under the age of thirteen or mentally incompetent, byany means, shall remove another from the place where the otherperson is found or restrain the liberty of the other person, forany of the following purposes:
To hold for ransom, or as a shield or hostage;
To facilitate the commission of any felony or flightthereafter;
To terrorize, or to inflict serious physical harm on thevictim or another * * *.
 {¶ 17} In the case at bar, defendant first argues that the witnesses who testified against him were not credible and, therefore, his Crim.R. 29 motion for acquittal should have been granted by the trial court. Second, defendant claims the overall weight of the state's evidence against him does not support any of his convictions. We disagree. The state's witnesses provided substantial evidence of Crawford's murder, along with details that incriminate defendant, including defendant's admission of the murder.
 {¶ 18} Johnson's testimony about the events at Gayle Solomon's house the day before Crawford was murdered is unrebutted and directly contradicts defendant's statement to police that he last saw Crawford on April 13th, four days before she was killed. Johnson said he was at Gayle Solomon's crack house and heard defendant making a deal to sell Sims items from Crawford's house in exchange for drugs. Johnson heard defendant saying he wanted someone to go to Crawford's to "get the stuff, TV's and stuff out." Johnson stated that Sims "said he was going to buy it."
 {¶ 19} Not only did Johnson's testimony lay the foundation for defendant's theft motive, it also established a time-line of events for the jury to assess. Johnson's testimony is consistent with other witnesses and the events they described in the hours leading to Crawford's murder.
 {¶ 20} Porter, a convicted felon, testified not only that for about 12 hours or so he drove defendant to various places, as well as to and from Crawford's, but also that defendant took the items from Crawford's and then dropped them off at Gayle Solomon's. Porter testified that defendant made four calls to Porter's cell phone the night Crawford was killed. Detective Garisek testified the police traced those calls and they were made from Crawford's house.
 {¶ 21} Gayle Solomon's testimony confirms the time frame described by both Johnson and Porter regarding the hours before and after Crawford's death. She also confirms that defendant and Porter delivered a TV, DVD, and other items to her house in the early morning hours of April 17, 2001.
 {¶ 22} Collins and Lips confirm the sequence of events described by Porter. On the 16th, Lips and Collins were with Crawford in her home. When both men left, Crawford was still alive. Lips returned to the house later and then left again at 9:30 p.m. When Collins returned to Crawford's and found the downstairs door was open, he went to get Lips. Both men returned to Crawford's, where they discovered her body, and called police around 4:30 a.m.
 {¶ 23} Police Officer Hawkins' testimony supports Collins' recollection of the events and time frame on the 16th. Hawkins testified he and his partner were dispatched to Crawford's address about "4:16 a.m." Hawkins described how bloody the apartment was when they found Crawford's body. This testimony is consistent with what defendant told Reginald Ballard, namely that he was upset because blood had spattered on an expensive pair of shoes he was wearing.
 {¶ 24} Porter, Collins, Lips, and Solomon all testified to essentially the same time frame of events the night of the 16th and the early morning hours of April 17, 2001. The testimony of these witnesses establishes that Crawford was murdered sometime between 9:30 p.m. on the 16th and 4:30 a.m. on the 17th. Porter's testimony, moreover, puts defendant at Crawford's during those same hours.
 {¶ 25} Even more incriminating is the evidence of Ballard, who told the jury that defendant admitted to killing Crawford. Ballard is an admitted felon and drug addict. He provided details, however, that defendant relayed to him — details that correspond with other evidence in the case. For example, Ballard's testimony corresponds with that of Porter and Solomon. All three described defendant as driving around with "Larry," "stopping in and out of the house, getting little bits of pieces of stuff to go and buy crack." This evidence belies defendant's statements to police that he did not know Porter.
 {¶ 26} Defendant told Ballard about stealing cigarettes to get crack. He also told Ballard how he had made Porter park a few houses down on one of their trips to Crawford's house. Ballard's testimony supports many of the details Porter describes.
 {¶ 27} Ballard told the jury defendant's explanation for killing Crawford. Ballard testified that defendant told him he and Crawford had an argument and that she had pushed him. Crawford had pushed him once before and he told her if she ever hit him again he would kill her. This evidence supports the jury finding that defendant was either under the influence of "sudden passion or in a sudden fit of rage, either of which [was] brought on by serious provocation occasioned by the victim." Ballard's testimony also confirms that of Porter and Detective Garisek that defendant had made calls from Crawford's house to Porter's cell phone.
 {¶ 28} We conclude that the evidence admitted at trial against defendant was sufficient to overcome a motion to acquit under Crim.R. 29.
 {¶ 29} Moreover, from the same analysis above under the sufficiency of the evidence, we conclude, this time, however, as the "thirteenth juror," weighing the evidence and all reasonable inferences and considering the credibility of the state's witnesses, the jury did not lose its way in convicting defendant of the crimes charged against him. We find the convictions were supported by the manifest weight of the evidence. Accordingly, defendant's first and second assignments of error are overruled.
III. The trial court erred by improperly instructing the juryduring voir dire which denied appellant's right to a fair trial.
 {¶ 30} Defendant argues that his right to a fair trial was denied
 {¶ 31} because the court used the term "jailhouse snitch" when it asked
 {¶ 32} the following questions to one juror.
THE COURT: Would you be able to listen to the testimony of apolice or peace officer and use the same tests of credibility asany other witness?
 JUROR NO. 15: Yes.
 THE COURT: Does the same hold true with jailhouse snitches;would you test that person's credibility the same as otherwitnesses?
 {¶ 33} "T]he scope of voir dire is left to the discretion of the trial court. State v. Lundgren (1995) 73 Ohio St.3d 474,481, 653 N.E.2d 304. "[D]eference must be paid to the trial judge who sees and hears the juror." Braden at ¶ 41, citingWainwright v. Witt (1985), 469 U.S. 412, 426, 105 S.Ct. 844,83 L.Ed.2d 841. During voir dire the judgment of the trial court will not be reversed absent an abuse of discretion. An abuse of discretion connotes an attitude on the part of the court that is unreasonable, arbitrary, or unconscionable. State v. Lamar
(Aug. 13, 1998), Lawrence App. No. 95CA31, 1998 Ohio App. LEXIS 3881, at *16 and *17, citing State v. Adams (1980),62 Ohio St.2d 151, 157, 404 N.E.2d 144.
 {¶ 34} As an example of improper instruction, defendant cites to the following inquiry by the court during voir dire:
THE COURT: Would you be able to listen to the testimony of apolice officer or peace officer and use the same tests ofcredibility as any other witness?
 JUROR NO. 15: Yes.
 THE COURT: Does the same hold true with jailhouse snitches;would you test that person's credibility the same as otherwitnesses?
 {¶ 35} Defendant argues that the trial court's inquiry as to whether one of the jurors could test the credibility of "jailhouse snitches" "the same as other witnesses" improperly implied that such testimony "should be viewed by the jury with "other than grave suspicion and weighed" other than "with great caution." Defendant's brief on appeal at p. 22.
 {¶ 36} We disagree with this interpretation of the trial court's statement. The trial judge implied only that the witness was to test the credibility of all witnesses, both police and snitches. Asking whether a juror can test credibility no matter who the witness is, is a fair question. The court never specified what kind of test was to be used. Moreover, the use of such a derogatory term as "jailhouse snitches" — no matter what question was asked — in itself introduces such a negative introduction to the witness that the state would have more of a reason to object than the defense.
 {¶ 37} We find that the court's reference to judging the credibility of "jailhouse snitches" did not deprive defendant of a fair trial. Accordingly. we conclude that the court's inquiry did not constitute an abuse of discretion. Defendant's third assignment of error lacks merit.
IV. The trial court erred in not granting a mistrial after awitness made an improper statement.
 {¶ 38} Defendant objects that Reginald Ballard referred to the fact that he and defendant "did time together." Defendant's brief on appeal at p. 22. According to defendant, this reference was an improper statement that would require the court to grant his motion for a mistrial. We disagree.
 {¶ 39} The grant or denial of an order of mistrial lies within the sound discretion of the trial court. State v. Glover
(1988), 35 Ohio St.3d 18, 517 N.E.2d 900. Moreover, mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible. State v. Franklin (1991),62 Ohio St.3d 118, 580 N.E.2d 1. "An appellate court will not disturb the exercise of that discretion absent a showing that the accused has suffered material prejudice." State v. Sage (1987),31 Ohio St.3d 173, 182, 510 N.E.2d 343, 350.
 {¶ 40} In this case, defendant contends Ballard's statement improperly introduced defendant's prior criminal record. We note first that the trial court suggested a curative instruction on Ballard's comment but defendant declined the offer.
 {¶ 41} Even without defendant's consent to continue without a curative instruction, we find no "material prejudice." The comment was fleeting and entirely unsolicited by the state. Considering the comment in light of the overwhelming evidence adduced at trial, we conclude defendant did not suffer any material prejudice and, therefore, he was not denied a fair trial. Because the trial court did not abuse its discretion in denying the motion for a mistrial, defendant's fourth assignment of error is overruled.
V. Appellant was denied effective assistance of counsel asguaranteed by section 11, article viii, of the ohio constitutionand the sixth and fourteenth amendments to the united statesconstitution when counsel failed to request a jury instruction oncredibility with respect to witnesses with prior convictions.
 {¶ 42} In this assignment of error, defendant argues he was denied effective counsel because his attorney did not request a specific jury instruction on the credibility of witnesses with prior convictions. We reject this claim because the trial court provided an instruction on the credibility of all witnesses.
 {¶ 43} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. State v. West, Cuyahoga App. No. 82579, 2003-Ohio-7067, citing Strickland v. Washington
(1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052.
 {¶ 44} "Accordingly, to show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989), 42 Ohio St.3d 136, 141,142, 538 N.E.2d 373.
 {¶ 45} In the instant matter, the trial court instructed the jury:
 * * * in determining the credibility of the witnesses, youshould consider the interest or bias the witness has in theoutcome of the verdict; his appearance, manner and demeanor whiletestifying before you; candor and frankness; the consistency ofhis or her testimony with other known facts in this case;accuracy of memory or inaccuracy of memory; intelligence or lackthereof; the reasonableness of the testimony; the opportunity thewitness had to see or hear or know the truth of the facts andcircumstances concerning the things to which he or she hastestified, and any and all other facts and circumstancessurrounding the testimony which, in your judgment, would add ordetract from the credibility or weight of the testimony.
 {¶ 46} Tr. 2871. The record also includes the court's instruction on witness credibility during voir dire. That instruction is as follows:
 * * * As jurors you have the sole and exclusive duty todecide the credibility of the witnesses who will testify in thiscase, which simply means that it is you who must decide whetherto believe or disbelieve a particular witness. In determiningthese questions, you will apply the tests of truthfulness whichyou apply in your daily lives. These tests include the appearanceof each witness on the stand, his or her manner of testifying,the reasonableness of the testimony, the opportunity that thewitness had to see, hear, and know the things concerning which heor she testified; his or her accuracy of memory; frankness orlack of it; intelligence, interest, and bias, if any togetherwith all of the facts and circumstances surrounding thetestimony.
 Applying these tests, you will assign to the testimony of eachwitness such weight as you deem proper. You are not required tobelieve the testimony of any witness simply because it was givenunder oath. You may believe or disbelieve all or any part of thetestimony of any witness.
 {¶ 47} Tr. 1218-1219.
 {¶ 48} In addition to these instructions, defendant maintains that his attorney should have requested the following instruction:
Evidence was received that a witness or witnesses wereconvicted of (describe prior conviction). If you find that awitness or witnesses were convicted of (describe priorconviction), you may consider that evidence only for the purposeof testing the witnesses' (credibility) (believability) and theweight to be given the witnesses' testimony.
 {¶ 49} Ohio Jury Instruction 402.61. Defendant claims this instruction "would have required the jury to more carefully
consider the credibility of the witnesses * * * [who] had prior criminal convictions." Emphasis added. Defendant's brief on appeal at p. 24.
 {¶ 50} We disagree that such an instruction was required. This instruction is designed to separate inferences as to credibility from other inferences such as guilt. Where credibility is the only issue, this instruction is unnecessary.
 {¶ 51} Moreover, defendant's proposed instruction does not carry the cautionary tenor defendant claims. It does not advise the jury to be wary of the truthfulness of testimony given by someone with prior convictions, nor should it. The instruction charges the jury to use a witness's prior conviction only for purposes of assessing that particular witness's credibility or the weight to be given that testimony. The same test for credibility, however, applies to all witnesses.
 {¶ 52} Further, between the two instructions given by the court on witness credibility, defendant's attorney conducted lengthy cross-examination of each of the state's witnesses, who admitted having criminal records. As pointed out by defendant, some of those witnesses were either impeached with prior inconsistent statements or admitted to making false statements to police during the initial investigation of Crawford's murder. Defendant's vigorous cross-examination gave the jury every opportunity to weigh each witness's credibility against the testimony of others as to defendant's guilt.
 {¶ 53} After the jurors were impaneled, the court instructed them about how to assess the credibility of each witness. The court's instruction is, in part, as follows:
 * * * As jurors you have the sole and exclusive duty todecide the credibility of the witnesses who will testify in thiscase, which simply means that it is you who must decide whetherto believe or disbelieve a particular witness.
* * *
 * * * you will assign to the testimony of each witness suchweight as you deem proper. You are not required to believe thetestimony of any witness simply because it was given under oath.You may believe or disbelieve all or any part of the testimony ofany witness.
 {¶ 54} Tr. 1218-1219. The court reiterated this instruction at the end of the case just before they began deliberations. Tr. 2870-2871.
 {¶ 55} From the record before this court, we conclude the jurors were amply and correctly instructed on witness credibility. They also had the opportunity to hear any inconsistencies in witness testimony and to observe each witness's demeanor while testifying on direct and cross-examination.
 {¶ 56} Finally, defendant does not explain how he has been prejudiced by his counsel's failure to request the specific instruction he suggests. There is no evidence that a reasonable probability exists that defendant's proposed instruction would have changed the outcome of his trial. Defendant's fifth assignment of error fails and is overruled.
The trial court erred by ordering convictions for separatecounts to be served consecutively because the offenses are alliedoffenses pursuant to R.C. 2941.25 and they are part of the sametransaction under R.C. 2929.14.
 {¶ 57} Defendant argues that the crimes of voluntary manslaughter,[4] aggravated burglary, aggravated robbery and kidnapping are allied offenses and, therefore, he should not have received consecutive sentences for each offense. R.C.2941.25 provides:
Where the same conduct by defendant can be construed toconstitute two or more allied offenses of similar import, theindictment or information may contain counts for all suchoffenses, but the defendant may be convicted of only one.
 Where the defendant's conduct constitutes two or more offensesof dissimilar import, or where his conduct results in two or moreoffenses of the same or similar kind committed separately or witha separate animus as to each, the indictment or information maycontain counts for all such offenses, and the defendant may beconvicted of all of them.
 {¶ 58} In determining whether crimes are allied offenses of similar import under R.C. 2941.25(A), the court must assess whether the statutory elements of the crimes correspond to such a degree that the commission of one crime will result in the commission of the other. State v. Rance (1999),85 Ohio St.3d 632, 710 N.E.2d 699. If the elements correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus. Id. The defendant has the burden of establishing that two offenses are allied. State v. Banks, Cuyahoga App. Nos. 81679, 81680, 2003-Ohio-1530.
 {¶ 59} Relevant to this appeal are R.C. 2903.03(A), voluntary manslaughter, R.C. 2911.11(A)(1), aggravated burglary, R.C.2911.01, aggravated robbery, and R.C. 2905.01, kidnapping. Comparing the elements of these statutes, we conclude that each offense requires proof of an additional fact that the other does not.
 {¶ 60} The voluntary manslaughter charge requires proof that defendant, while under the influence of sudden passion or in a sudden fit of rage, knowingly caused the death of Crawford. The aggravated burglary charge requires proof that defendant trespassed onto Crawford's property with the purpose to commit a crime. Aggravated robbery requires proof that defendant inflicted serious physical harm upon Crawford. And kidnapping requires proof that defendant restrained Crawford's liberty. Each of the crimes require proof of an element not included in the others. Accordingly, voluntary manslaughter, aggravated burglary, aggravated robbery and kidnaping are distinguishable because the elements do not correspond to such a degree that the commission of one will result in the commission of the other.
 {¶ 61} Because the offenses are not allied offenses of similar import, we find no error in the court's judgment. Accordingly, Assignment of Error No. VI is without merit.
The trial court erred by ordering consecutive sentenceswithout making the appropriate findings required by R.C.2929.14(e)(4).
 {¶ 62} Defendant asserts that before the trial court sentenced him to consecutive terms, it failed to make the findings required by R.C. 2929.14(E)(4). R.C. 2929.14(E)(4), in relevant part, provides:
The court must find that consecutive sentences are: (1)necessary to protect the public from future crime or to punishthe offender; (2) not disproportionate to the seriousness of thedefendant's conduct or to the danger the defendant poses to thepublic; and (3) one of the following applies: (a) the offendercommitted the offenses while awaiting trial or sentencing, undersanction or under post-release control; (b) the harm caused bythe multiple offenses was so great or unusual that a singleprison term would not adequately reflect the seriousness of hisoffense; or (c) the offender's criminal history demonstrates thatconsecutive sentences are necessary to protect the public fromfuture crime.
 {¶ 63} See State v. Weaver, Cuyahoga App. No. 82144,2003-Ohio-6159. R.C. 2929.14(E)(4) does not require the court to recite the exact words of the statute so long as the required statutory findings are discernible from the record. R.C.2929.19(B)(2)(c); State v. Casalicchio (June 12, 2003), Cuyahoga App. No. 82216, 2003-Ohio-3028. Moreover, "pursuant to R.C. 2929.14(E)(4) and 2929.19(B)(2)(c), when imposing consecutive sentences, a trial court is required to make the statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing."
 {¶ 64} State v. Comer, 99 Ohio St.3d 463, 468,2003-Ohio-4165, 793 N.E.2d 473.
 {¶ 65} In the case at bar, the sentencing transcript includes the following statements by the court.
The court finds that pursuant to Ohio Revised Code Section2929.14(E)(4) and 2929.19(B)(2)(c)), that the defendant isrequired to serve these prison terms consecutively because theconsecutive service is necessary to protect the public fromfuture crime, and that consecutive sentences are notdisproportionate to the seriousness of the offender's conduct andto the danger the offender poses to the public.
 The reason for these findings are that the defendantpreviously served terms in prison of 5 to 15 years in Case Number212402 for robbery with an additional specification, six monthsin Case Number 408613 for receiving stolen property and sixmonths in Case 2001051277 for receiving stolen property andforgery.
 Just prior to starting his sentence in Case Number 408613, onApril 17th, 2001, the defendant kidnapped, robbed and burglarizedthe home of his then girlfriend, Lori Crawford. During thecommission of these crimes he killed Ms. Crawford by bludgeoningthe back of her head 22 times with a blunt instrument, fracturingher skull in numerous places and caused fatal brain injuries. Inaddition, the defendant stabbed Ms. Crawford 11 times in her backand on the inner part of her right breast, and on her right handFinally, the defendant also strangled Ms. Crawford with whatappears to be an electrical cord. Some, if not all, of theseinjuries were inflicted while the victim's legs were tied with acord from an electrical heater.
 The Court further finds, pursuant to Ohio Revised Code Section2929.14(E)(4)(a), that the defendant committed the multipleoffenses that make up these cases while on bond preparing toserve his sentences in Case Numbers 408613 and 20011051277 forthe prior offenses the Court has previously mentioned.
 Moreover, pursuant to Ohio Revised Code Section2929.14(E)(4)(c), the defendant's history of criminal conductdemonstrates that consecutive sentences are necessary to protectthe public from future crime by the defendant.
 The reason for this finding is, that despite beingincarcerated in two separate cases for 5 to 25 years and 9 to 15years, as previously stated, the defendant, while preparing toserve two more prison sentences in the cases mentioned above,committed the acts of voluntary manslaughter, aggravatedburglary, aggravated robbery and kidnapping, as earlier stated,resulting in the untimely death of Lori Crawford.
 {¶ 66} Tr. 2951-2953.
 {¶ 67} The trial court found that defendant had previously been incarcerated and committed the crimes against Crawford while he was out on bond. R.C. 2929.14(E)(4)(a). This finding corresponds to the necessity of protecting the public from future crime. R.C. 2929.14(E)(4). The court also found that consecutive terms were not disproportionate to the seriousness of the defendant's conduct because of the heinous and gruesome nature of the crime: that is, she was tied up, strangled, and bludgeoned.
 {¶ 68} On the record before this court, we conclude the court sufficiently stated its findings and reasons in support. The trial court, therefore, did not err in sentencing defendant to consecutive terms of incarceration. Accordingly, defendant's seventh assignment of error is overruled.
Judgment accordingly.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, P.J., and Gallagher, J., concur.
[1] Defendant was originally indicted on six counts. Counts one and two charged aggravated murder in violation of R.C. 2903.01. Both counts carried three felony murder specifications. Count three charged aggravated burglary in violation of R.C. 2911.11. Count four charged aggravated robbery, R.C. 2911.01. In counts five and six, defendant was charged with kidnapping in violation of 2905.01. Before trial, the state dismissed one of the kidnaping charges. Several counts of the indictment also carried repeat violent offender and notice of prior conviction specifications.
[2] The house was owned by Crawford's former boyfriend, Pearman Jones. He allowed her to stay in the house and use his car even though they were no longer dating. While living in Pearman's house, Crawford was dating defendant.
[3] Defendant was also sentenced in Case No. 412947, a separate case in which he pled guilty to attempted robbery. This sentence was ordered to run concurrent to his sentences in the instant case.
[4] A lesser included offense of aggravated murder. See Statev. Benge (1996), 75 Ohio St.3d 136, 140, 1996-Ohio-227,661 N.E.2d 1019, quoting State v. Deem (1988), 40 Ohio St.3d 205,533 N.E.2d 294, paragraph two of the syllabus.