JOURNAL ENTRY AND OPINION
{¶ 1} The appellant, Jeffrey Elko, appeals his criminal convictions for felonious assault and improperly discharging a firearm into a habitation following a trial by jury. The appellant also appeals from the subsequent prison sentence that was imposed by the trial court. After reviewing the record and for the reasons set forth below, we affirm the appellant's convictions and prison sentence.
 {¶ 2} On April 9, 2003, the Cuyahoga County Grand Jury charged Elko with three counts of felonious assault, in violation of R.C. 2903.11, and one count of improperly discharging a firearm into a habitation, in violation of R.C. 2923.161; all charges were felonies of the second degree. Each charge also carried one- and three-year firearm specifications, pursuant to R.C. 2941.141 and R.C. 2941.145 respectively. Elko pleaded not guilty to the entire indictment.
 {¶ 3} On August 20, 2003, the jury trial commenced and the following facts were presented: On December 25, 2002, Kenneth Rutherford, his mother, Erika Rutherford, and his grandmother, Elvira Werner, were inside their home in the city of Parma watching television. Around 7:45 p.m., Kenneth and his mother ran to the side living room window when they heard what sounded like firecrackers exploding. Directly below the living room window, they saw Kenneth's former friend, Jeffery Elko, firing a small black pistol into the home's glass block basement window.
 {¶ 4} Elko had been friends with Kenneth for over three years and knew that Kenneth's bedroom was located directly behind the glass block window. Kenneth's family was familiar with Elko and disapproved of their friendship. It was later discovered that Elko and Kenneth had a homosexual relationship. Kenneth, being much younger than Elko, stated he was embarrassed and frightened of his relationship with Elko. Elko had started to harass Kenneth when Kenneth tried to end the relationship.
 {¶ 5} Both Kenneth and Erika testified that they clearly saw Elko's face. They stated the window they viewed Elko from was only two feet away from where he was standing. They also noted that Elko had been driving a gold colored Dodge Neon the day of the shooting, even though they knew Elko owned a Chevrolet Avalanche. Erika stated that after Elko finished shooting at the window, he looked up at her and arrogantly smiled.
 {¶ 6} Elvira Werner immediately recognized the noise as being gun shots. Fearless, she proceeded outside and confronted Elko in the driveway calling him a "dirty name." Elvira stated she stood about four feet away from Elko and clearly saw his face. Elvira stated that after she confronted him, Elko got into a gold colored Dodge Neon and slowly backed out of the driveway. Elvira testified she knew the vehicle was a Neon because she had previously owned one. Elvira also stated that Elko had thrown an empty 40-ounce beer bottle at the home's front window earlier that day.
 {¶ 7} After the shooting, the family called the Parma Police Department. Detective Thomas Bunyak and Patrolman Thomas Krebs removed bullet fragments from the glass block window and took statements from the family members. The family members told the police they were positive that Jeffery Elko had shot at the window, and they described the vehicle he was driving.
 {¶ 8} Through his investigation, Detective Bunyak discovered that, a few days before the shooting, Elko had rented a champagne colored Dodge Neon from Thrifty Car Rental. Detective Thomas Bunyak and Patrolman Thomas Krebs testified that none of the bullets fired by Elko had penetrated into the house.
 {¶ 9} On August 22, 2003, after two days of trial, a jury found Elko guilty on all charges. The trial court ordered a presentence investigation report and a psychiatric evaluation of Elko. On September 25, 2003, the trial court sentenced Elko to two years of imprisonment on each count of felonious assault and two years for improperly discharging a firearm into a habitation; these sentences were ordered to run concurrently. The trial court then sentenced Elko to three years imprisonment on the firearm specifications, merged them, and ordered this sentence to run consecutively with the two-year sentence. Elko was sentenced to a total of five years incarceration.
 {¶ 10} The appellant brings this timely appeal alleging eleven assignments of error for our review. Some of the assignments will be grouped together for discussion because they are interrelated.
 {¶ 11} "I. Defendant was denied effective assistance of counsel."
 {¶ 12} In his first assignment of error, the appellant claims his trial attorney rendered ineffective assistance of counsel in three instances. Appellant claims his trial counsel was ineffective when he elicited prejudicial testimony during the cross-examination of Erika Rutherford that the appellant was a convicted felon and had previously pled to a two-year prison sentence. The appellant claims this error was further compounded when his trial counsel waited until the conclusion of the trial in order to move the court for a mistrial.
 {¶ 13} The appellant further claims his trial counsel was ineffective for not requesting a jury instruction relating to the appellant's alibi on the day of the shooting. Finally, the appellant claims his counsel was ineffective for failing to request an instruction regarding whether the victims could identify the appellant as being the person who shot at the widow given the lighting and weather conditions on the day of the incident.
 {¶ 14} It is presumed that a properly licensed attorney executed his legal duty in an ethical and competent manner.State v. Smith (1985), 17 Ohio St.3d 98. To prevail on a claim of ineffective assistance of defense counsel, a postconviction petitioner must demonstrate (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that trial counsel's deficient performance prejudiced his defense. See Strickland v. Washington (1984), 466 U.S. 668,694, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. To establish prejudice, the petitioner must demonstrate that counsel's deficient performance "so undermined the proper functioning of the adversarial process that the trial could not have reliably produced a just result."State v. Powell (1993), 90 Ohio App.3d 260, 266, 629 N.E.2d 13; see, also, Strickland, supra.
 {¶ 15} Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if a better strategy had been available. See State v.Phillips, 74 Ohio St.3d 72, 85, 1995-Ohio-171, 656 N.E.2d 643.
 {¶ 16} In the instant matter, Erika Rutherford testified at trial, during cross-examination by defense counsel, that the appellant was a "convicted felon." Following this improper comment, an off-the-record discussion commenced between the trial court, prosecutor and defense counsel. Thereafter, the cross-examination resumed and the following exchange between defense counsel and Erika Rutherford took place:
 {¶ 17} "Counsel: Okay. So I guess just to rehash, you don't like — you don't want Jeffery Elko hanging out with your son, correct?
 {¶ 18} "Erika: I don't want him destroying my property, harassing my family —
 {¶ 19} "* * *
 {¶ 20} "Erika: That was the agreement last year, that he was not to come around my son or my house.
 {¶ 21} "Counsel: Okay. So you don't want him around your house? Yes or no.
 {¶ 22} "Erika: I don't want him around us.
 {¶ 23} "Counsel: Okay. And if it took putting him into prison to keep him away from your house, you would be all for that, right?
 {¶ 24} "Erika: Well there is no truth in sentencing. That has not worked either.
 {¶ 25} "Counsel: Okay. So you I guess — can you expand on that no truth in sentencing?
 {¶ 26} "Erika: Well, he pled to a two-year sentence —" (Tr. at 42.)
 {¶ 27} After this reference about the appellant serving a two-year prison sentence, the trial court conducted another off-the-record discussion with defense counsel and the prosecutor; the trial continued without any motions being filed.
 {¶ 28} At the conclusion of the trial, defense counsel asked for a mistrial based on the prejudicial testimony of Erika Rutherford. The trial court stated on the record that he might have "given [the motion] great consideration" if the appellant had asked for it at the time the prejudicial comments were made. (Tr. at 170.)
 {¶ 29} The trial court reminded defense counsel that during the two sidebar discussions, he was concerned with the line of questioning that counsel pursued during the cross-examination of Erika Rutherford. Defense counsel's questions were delving into the appellant's past convictions and prior bad acts committed against the victims. Defense counsel informed the trial court that it was his trial strategy to show the jury that Erika Rutherford had prior problems with the appellant. Specifically, to show that Erika Rutherford would assume the appellant shot at her house even if she did not see him because she hated him. Defense counsel wanted to show that Erika Rutherford's hatred of the appellant would cause her to say anything in order to convict him and get the appellant away from her son.
 {¶ 30} The trial court dismissed the motion for mistrial stating defense counsel's actions were strategic. The trial court would not allow defense counsel to try a trial strategy and then ask for a mistrial when it seemed like the trial strategy might fail. However, the trial court did agree to submit a curative instruction prepared by defense counsel to the jury, advising that they should not consider any reference to the appellant's past criminal conviction during deliberations.
 {¶ 31} Defense counsel's trial strategy was debatable; however, we cannot find that his representation of the appellant was deficient when the trial strategy tended to show a witness's bias and animus towards a defendant.
 {¶ 32} The appellant then claims that his defense counsel was deficient for failing to request a jury instruction relating to the appellant's alibi. A review of the record indicates that the appellant did not file a notice of alibi before trial, pursuant to Crim.R. 12.1. The appellant alleges he was driving from his mother's apartment in Cuyahoga Falls to his grandmother's house in Maple Heights during the time when the shooting occurred.
 {¶ 33} The appellant's mother, Janice Marcin, testified that she lives in Cuyahoga Falls and that the appellant was at her apartment for Christmas dinner on the day of the shooting. She stated that the appellant had left her home around 7:00 p.m. on December 25th. The appellant resides with his grandmother, Elizabeth Elko, who owns a home in Maple Heights. The appellant's grandmother testified the appellant returned home from his mother's apartment on December 25th around 8:00 p.m.
 {¶ 34} Marcin testified that it would take her 40 to 45 minutes to drive from her apartment in Cuyahoga Falls to the appellant's grandmother's home in Maple Heights on a normal day. The appellant also produced evidence that it had snowed ten inches on the day of the shooting. Kenneth Rutherford and Elvira Werner both testified that their house in Parma was about five miles away from the appellant's home in Maple Heights and that it would take between ten and twenty minutes to drive there. Patrolman Krebs testified he received the complaint that a gun was fired into the Rutherford house between 7:47 p.m. and 7:49 p.m. on December 25, 2002.
 {¶ 35} The appellant claims it was impossible for him to leave his mother's home in Cuyahoga Falls at 7:00 p.m. on Christmas day, drive to the Rutherford's home in Parma, shoot the window, and then return to his grandmother's home in Maple Heights by 8:00 p.m.; especially when it had snowed ten inches that day. The record reveals that all of this information was before the jury even though they were not provided with a written alibi instruction.
 {¶ 36} The believability of the appellant's alibi was based on the credibility of the witnesses and is a question for the jury to decide. Given the time frames testified to, we find it plausible that the appellant left his mother's house in Cuyahoga Falls, drove to the Rutherford's house in Parma, shot the window, and returned to his home in Maple Heights in one hour. The appellant's alibi is weak at best. We find that defense counsel was not deficient in failing to request an instruction on alibi.
 {¶ 37} Finally, the appellant claims his defense counsel was ineffective for failing to request a jury instruction relating to the identification of the appellant on the night of the shooting. However, after reviewing the trial transcript, we find that this instruction was not needed, and defense counsel was not deficient for failing to request it.
 {¶ 38} All three victims knew the appellant, recognized him on the day of the shooting, and identified the rented vehicle he was driving. Although it was dark outside and had been snowing, all three of the victims testified they clearly saw the appellant; two testified they saw him shooting at the window. Identification of the appellant was not an issue at trial; it was conceded by defense counsel. The primary issue at trial was the credibility of the witnesses' testimony, which placed the appellant at the scene of the crime.
 {¶ 39} Furthermore, if we had found that appellant's trial counsel was deficient, the deficiency would have only resulted in the granting of a mistrial. Based on the evidence presented in this case, the appellant would have been retried and surely convicted; therefore, the appellant would not have experienced any prejudice resulting from defense counsel's actions. The appellant's first assignment of error is overruled.
 {¶ 40} "II. Defendant was denied due process of law when the court refused to grant a mistrial."
 {¶ 41} In his second assignment of error, the appellant claims the trial court erred when it failed to grant a mistrial based on the prejudicial testimony elicited from Erika Rutherford that appellant was a convicted felon who served a two-year prison sentence.
 {¶ 42} A mistrial can be granted when the impartiality of one or more of the jurors may have been affected by an improper comment. State v. Talbert (1986), 33 Ohio App.3d 282; State v.Abboud (1983), 13 Ohio App.3d 62. The grant or denial of an order of mistrial lies within the sound discretion of the trial court. State v. Cobbins, Cuyahoga App. No. 82510, 2004-Ohio-3736; State v. Glover (1988), 35 Ohio St.3d 18,517 N.E.2d 900. Moreover, mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible. State v. Franklin (1991), 62 Ohio St.3d 118,580 N.E.2d 1. "An appellate court will not disturb the exercise of that discretion absent a showing that the accused has suffered material prejudice." State v. Sage (1987), 31 Ohio St.3d 173,182, 31 Ohio B. 375, 510 N.E.2d 343, 350.
 {¶ 43} In the instant matter, a review of the trial record indicates that the trial court issued the following curative instruction to the jury: "Testimony was received concerning the possibility that defendant, Jeffery Elko, had a prior criminal conviction. Such testimony should not have been given. It should not be considered for any purpose during your deliberation." (Tr. at 251.)
 {¶ 44} A jury is presumed to follow instructions, including curative instructions, given it by a trial judge. State v.Hardwick, Cuyahoga App. No. 79701, 2002-Ohio-496; see, also,State v. Loza (1994), 71 Ohio St.3d 61, 75, 641 N.E.2d 1082. Given the overwhelming evidence of guilt produced in this case and discussed throughout this opinion, the appellant has failed to show how he suffered any material prejudice in light of the curative instruction; therefore, the trial court did not abuse its discretion in refusing to grant a mistrial based on the improper comments. The appellant's second assignment of error is overruled.
 {¶ 45} "VIII. Defendant was denied due process of law when he was convicted of felonious assault."
 {¶ 46} "IX. Defendant was denied due process of law when the court overruled Defendant's motion for judgment of acquittal."
 {¶ 47} In his eighth assignment of error, the appellant claims he should not have been convicted of felonious assault because he did not cause physical harm to any of the victims. Furthermore, in his ninth assignment of error, appellant claims the trial court should have granted his motion for judgment of acquittal because Kenneth Rutherford lied under oath about his homosexual relationship with appellant.
 {¶ 48} Crim.R. 29(A) governs motions for acquittal and provides for a judgment of acquittal "if the evidence is insufficient to sustain a conviction * * *." Crim.R. 29; see, also, Cobbins, supra. "An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. A verdict will not be disturbed on appeal unless reasonable minds could not reach the conclusion reached by the trier of fact."State v. Watts, Cuyahoga App. No. 82601, 2003-Ohio-6480, citingState v. Jenks (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492. Sufficiency is a test of adequacy. State v. Thompkins,78 Ohio St.3d 380, 386-387, 1997-Ohio-52, 678 N.E.2d 541.
 {¶ 49} In the instant matter, the appellant was convicted of three counts of felonious assault, in violation of R.C. 2903.11, which states in pertinent part:
 {¶ 50} "(A) No person shall knowingly do either of the following:
 {¶ 51} "* * *
 {¶ 52} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 53} Kenneth Rutherford testified that on December 25th, the light in his bedroom was on, which illuminated the basement glass block window. He further stated that, even with the bedroom light on, a person standing on the outside of the window could not see inside. The evidence shows that the appellant fired a pistol, which is a dangerous ordnance, into the glass block window. Given this testimony, the appellant could not possibly know who would be inside Kenneth's bedroom at the time of the shooting.
 {¶ 54} The fact that none of the victims were physically hurt and that none of the bullets penetrated through the glass block window are irrelevant. Firing a pistol into a window, without knowing who could be behind it, satisfies a knowing attempt to cause physical harm. It is fortunate that Elvira Werner, Erika Rutherford and Kenneth Rutherford were watching television and making food in the kitchen at the time of the shooting. The evidence presented at trial was sufficient to convict the appellant of felonious assault. The appellant's eighth assignment of error is overruled.
 {¶ 55} Next, the appellant claims that the trial court should have granted one of his motions for judgment of acquittal based on the fact that Kenneth Rutherford lied under oath about whether he had a homosexual relationship with the appellant. We disagree with the appellant's assertion.
 {¶ 56} During the prosecution's case in chief, Kenneth Rutherford stated to defense counsel on cross-examination that he was only friends with the appellant; he specifically denied having any sexual relationship with him. Later in the trial, it was discovered that a videotape existed that depicted the appellant and Kenneth Rutherford engaged in homosexual relations. Kenneth Rutherford was brought back to the stand where he was impeached by defense counsel and admitted he lied about his sexual relationship with the appellant because he was embarrassed and frightened.
 {¶ 57} Based on Crim.R. 29, we find that even if the testimony of Kenneth Rutherford was completely excluded from the record, there
 {¶ 58} would still be sufficient evidence to uphold the appellant's convictions. Erika Rutherford and Elvira Werner both heard gun shots. Both testified they saw the appellant clearly on the night of the shooting. Erika Rutherford saw a pistol in the appellant's hand and observed him shooting at the basement window. Elvira Werner confronted the appellant on the driveway. Both observed and identified the rented vehicle he was driving. The appellant's ninth assignment of error is overruled.
 {¶ 59} "III. Defendant was denied due process of law by reason of improper prosecutorial argument."
 {¶ 60} In addressing a claim for prosecutorial misconduct, we must determine (1) whether the prosecutor's conduct was improper and (2) if so, whether it prejudicially affected the defendant's substantial rights. State v. Smith (1984), 14 Ohio St.3d 13,14, 14 Ohio B. 317, 470 N.E.2d 883. The touchstone of this analysis "is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips (1982), 455 U.S. 209, 219,71 L.Ed.2d 78, 102 S.Ct. 940. A trial is not unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments. State v. Treesh,90 Ohio St.3d 460, 464, 2001-Ohio-4, 739 N.E.2d 749.
 {¶ 61} Appellate courts ordinarily decline to reverse a trial court's judgment because of counsel's misconduct in argument, unless (a) the argument injects non-record evidence or encourages irrational inferences, such as appeals to prejudice or juror self-interest or emotion, (b) the argument was likely to have a significant effect on jury deliberations, and (c) the trial court failed to sustain an objection or take other requested curative action when the argument was in process. State v. Maddox (Nov. 4, 1982), Cuyahoga App. Nos. 44600 and 44608, at 9-10. Generally, the prosecution is entitled to a certain degree of latitude in making its closing remarks. State v. Woodards (1966),6 Ohio St.2d 14.
 {¶ 62} In the instant matter, the appellant claims the prosecutor made several prejudicial comments during his closing argument. First, the prosecutor stated: "I represent all of the individuals in the State. And, of course, Mr. Powers is representing his client [the Defendant], and only his client to the detriment of everybody else." (Tr. at 199.) The appellant claims this comment polarized the jury against him. We disagree.
 {¶ 63} Right after the comment was made, the defense made an objection. The trial court sustained the objection to the reference that Mr. Powers is representing the appellant "to the detriment of everybody else." The trial court then stated a curative instruction: "He is representing his client, but not to the detriment. You both have a duty to represent, and he is representing his client to the best of his ability. I will accept that statement." (Tr. at 199.)
 {¶ 64} We find that the trial court's subsequent instruction cured the improper comment. Furthermore, as stated previously in this opinion, the effect of the comment would not have prejudiced the appellant because of the evidence that was produced against him in this case; the jury would have found the appellant guilty without the improper comment.
 {¶ 65} Second, the appellant claims the following statements made by the prosecutor allude to the appellant's failure to take the stand and testify in his own defense. The prosecutor stated: "No other evidence, no other testimony exists to contradict those facts. And I want you to remember that when you listen to what Mr. Powers has to say." (Tr. at 202.) The prosecutor also stated: "* * * there has been no testimony by anyone to state that these people are not telling the truth." (Tr. at 219.)
 {¶ 66} We disagree with the appellant's interpretation of the prosecutor's argument. After reviewing the record, the prosecutor was not at all referring to the fact that the defendant did not testify in his own defense, but was instead referring to the lack of defense witnesses who could rebut the testimony of the victims. The two witnesses produced by the defense only testified to the fact that they never saw the appellant with a gun and to the approximate times appellant left and arrived at the other's home. The appellant's third assignment of error is overruled.
 {¶ 67} "IV. Defendant was denied due process of law when the court failed to give any instruction concerning the willful lies by Kenneth Rutherford."
 {¶ 68} "V. Defendant was denied due process of law when the court did not give any instruction concerning alibi."
 {¶ 69} "VI. Defendant was denied due process of law when the court instructed the jury that defendant could be found guilty for the intervening act of another."
 {¶ 70} "VII. Defendant was denied due process of law when the court amended the indictment by allowing the Defendant to be convicted for a date of offense other than that specified in the indictment."
 {¶ 71} In his fourth, fifth, sixth and seventh assignments of error, the appellant claims the trial court erred by failing to provide the jury with instructions explaining the impeachment of Kenneth Rutherford and the appellant's alleged alibi on the night of the shooting. The appellant further alleges the trial court erred in giving the jury improper instructions that the defendant could be found guilty for the intervening act of another and that the defendant could be convicted of committing the offense on a date other than that specified in the indictment.
 {¶ 72} We note that appellant did not object to the jury instructions at trial and, therefore, waived all but plain error.State v. Underwood (1983), 3 Ohio St.3d 12, 3 Ohio B. 360,444 N.E.2d 1332, syllabus. To constitute plain error, the error must be obvious on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection. See State v. Tichon, (1995), 102 Ohio App.3d 758, 767,658 N.E.2d 16.
 {¶ 73} A defective jury instruction does not rise to the level of plain error unless it can be shown that the outcome of the trial would clearly have been different but for the alleged error. State v. Campbell (1994), 69 Ohio St.3d 38,630 N.E.2d 339; Cleveland v. Buckley (1990), 67 Ohio App.3d 799,588 N.E.2d 912. Moreover, a single challenged jury instruction may not be reviewed piecemeal or in isolation, but must be reviewed within the context of the entire charge. See, State v. Hardy
(1971), 28 Ohio St.2d 89, 276 N.E.2d 247; State v. Fields
(1984), 13 Ohio App.3d 433, 469 N.E.2d 939.
 {¶ 74} First, the appellant claims the trial court should have specifically instructed the jury that Kenneth Rutherford lied under oath about his sexual relationship with the appellant. The appellant claims this issue was a material fact of the case. We disagree. Kenneth Rutherford stated he was embarrassed and frightened of his sexual relationship with the appellant. He was impeached on the stand and admitted that he lied about having a homosexual relationship.
 {¶ 75} The trial court instructed the jury that it is their job to consider the credibility and believability of each person testifying. The trial court stated to the jury: "If you believe from all the evidence that a witness was mistaken or has testified untruthfully to a fact, you are not required to believe the testimony simply because the witness was under oath." (Tr. at 233.) The trial court also stated: "You may believe all of the testimony of a particular witness, or you may disbelieve all of the testimony of a particular witness." Id. The trial court goes on in the transcript for three more pages discussing how to determine the weight and credibility of testifying witnesses. After reviewing the credibility instruction that the trial court gave to the jury, we can find no error with the instruction; it was more than adequate.
 {¶ 76} Second, the appellant claims the trial court erred by not instructing the jury about his alibi. As previously stated, the trial court could have excluded defendant's alibi evidence entirely because his notice of alibi was never filed, in violation of Crim.R. 12.1. However, the trial court did not exclude this testimony and permitted defendant to present evidence about an alibi. As we have previously discussed, the appellant's alibi is weak at best; therefore, even if the trial court had given the jury an instruction on alibi, we cannot say that the jury verdict would have been different.
 {¶ 77} Finally, the appellant alleges the trial court erred when it instructed the jury that the defendant could be found guilty for the intervening act of another and also could be found guilty for committing the offense on a date other than the date specified in the indictment.
 {¶ 78} The trial court stated: "[T]he defendant is responsible for the natural consequences of the Defendant's unlawful act of failure to act, even though physical harm to a person was also caused by the intervening act or failure to act of another person." (Tr. at 246-247.) The trial court also stated: "The date of the offense in this indictment allegedly occurred has previously been stated. It is not necessary that the State prove that the offense was committed on the exact day as charged in the indictment. It is sufficient to prove that the event took place on a date reasonably near the date claimed." (Tr. at 252.)
 {¶ 79} The record in this case reflects that the trial court used Ohio Jury Instructions when charging the jury. We find that it was error for the trial court to state the appellant could be convicted for the intervening act of another person because this instruction does not apply to the facts of this case. However, the error was harmless and would not have affected the jury's deliberations whatsoever. No intervening acts occurred in this case, nor were any suggested by either side. Jury instructions should be simple, clear, and concise and relate to the facts of the case.
 {¶ 80} Furthermore, the exact date and time that the offense was committed is immaterial unless the nature of the offense requires that the exactness of time would be essential. State v.Tesca (1923), 108 Ohio St. 287. The fact that the appellant failed to file notice of his alibi before trial renders the exact time and date of the offense immaterial. However, as previously discussed, even if an alibi instruction was given to the jury, reasonable minds could conclude that the appellant was more than able to commit the alleged crimes in the time frames presented.
 {¶ 81} After reviewing the entire jury charge in total, we cannot find that the outcome of the trial would have been different had the trial court included or modified the jury instructions as discussed above. The appellant's fourth, fifth, sixth, and seventh assignments of error are hereby overruled.
 {¶ 82} "X. Defendant was denied due process of law when he was multiply sentenced."
 {¶ 83} "XI. Defendant was denied due process of law when he was doubly sentenced for a firearm where a firearm was an element of the offense."
 {¶ 84} In the appellant's tenth and eleventh assignments of error, he claims he was denied due process when he was convicted of both felonious assault and improperly discharging a firearm at or into a habitation. The appellant claims the trial court should have merged the offenses because they are allied offenses of similar import. Furthermore, the appellant claims he should not have been charged with additional firearm specifications when a firearm was an element of the underlying crimes.
 {¶ 85} The crimes of felonious assault, R.C. 2903.11, and improperly discharging a firearm into a habitation, R.C.2923.161, are not allied offenses of similar import.
 {¶ 86} R.C. 2923.161, improperly discharging firearm at or into habitation; school-related offenses states:
 {¶ 87} "(A) No person, without privilege to do so, shall knowingly do any of the following:
 {¶ 88} "(1) Discharge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual;"
 {¶ 89} R.C. 2903.11, felonious assault, states:"(A) No person shall knowingly do either of the following:
 {¶ 90} "* * *
 {¶ 91} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 92} For R.C. 2923.161 to apply, it is irrelevant whether the structure is occupied or unoccupied at the time of the shooting so long as it is found to be someone's habitation. Moreover, R.C. 2923.161 specifically requires that the perpetrator uses a firearm in order to commit the crime. The revised code defines a "firearm" as a deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. R.C. 2923.11 (B)(1). R.C.2923.161 basically applies when a firearm is discharged at a specific structure or in a prohibited area, regardless of the presence of people.
 {¶ 93} R.C. 2903.11 applies when a person knowingly causes or attempts to cause physical harm to another. The crime can be committed anywhere. The perpetrator can either use a "deadly weapon" or a "dangerous ordnance" in committing the offense. A "deadly weapon" is any instrument, device, or thing capable of inflicting death, and designed for use as a weapon, or possessed, carried, or used as a weapon. R.C. 2923.11 (A). A "dangerous ordnance" is any firearm, pistol, rifle, shotgun, cannon, or artillery piece. R.C. 2923.11(L). R.C. 2903.11 is designed to protect the person, rather than a specific structure or area.
 {¶ 94} Given the plain language of the statutes, the appellant can be charged and convicted of discharging a firearm into a habitation and also for felonious assault if there are people inside the habitation at the time of the shooting. If none of the victims had been inside the house at the time the appellant shot the window, then he could only have been convicted of R.C. 2923.161. However, since all three victims were inside the habitation, and could have been behind the basement bedroom window at the time of the shooting, the appellant's convictions under both R.C. 2923.161 and R.C. 2903.11 were proper. The appellant's tenth assignment of error is overruled.
 {¶ 95} In addition, the appellant claims he cannot be convicted and sentenced on the firearm specifications because they are elements of the underlying crimes. R.C. 2923.161
specifically requires that a firearm be used to commit the crime; therefore, we agree with appellant that a firearm is an element of the underlying offense, and it was error for him to have been convicted and sentenced to a three-year firearm specification.
 {¶ 96} However, unlike R.C. 2923.161, R.C. 2903.11 does not require the use of a firearm in order to complete the crime. A perpetrator can commit a felonious assault using, for example, a knife, baseball bat, brick, or tire iron — just about any object that can be used as a weapon. Since using a firearm in order to commit the offense is not a required element, it was proper for the appellant to be convicted and sentenced to a three-year firearm specification in addition to being convicted and sentenced for felonious assault.
 {¶ 97} Even though we have found that it was an error to convict and sentence the appellant to a three-year firearm specification in addition to convicting and sentencing him for improperly discharging a firearm into a habitation, we hold that the error is harmless. The record indicates that the trial court sentenced the appellant to three years on each of the firearm specifications that were attached to the three counts of felonious assault. The trial court then merged all of the firearm specifications for the purposes of sentencing and ordered that the three-year firearm specifications run prior to, and consecutively with, the two-year concurrent sentence for the underlying offenses; therefore, the prison sentence the appellant received would have included a three-year consecutive firearm specification, even without the error. Because the appellant's sentence remains unchanged, his eleventh assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Corrigan, A.J., and Rocco, J., Concur.