JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Terry Ferrell, appeals his convictions for four counts of aggravated murder, two counts of aggravated burglary, two counts of aggravated robbery and two counts of kidnapping, entered after a jury trial. For the reasons that follow, we affirm Ferrell's convictions but remand for resentencing.
 {¶ 2} The record reflects that a ten-count indictment was returned against appellant charging him with four counts of aggravated murder, in violation of R.C. 2903.01, all with felony murder and mass murder specifications; two counts of aggravated burglary, in violation of R.C. 2911.11; two counts of aggravated robbery, in violation of R.C. 2911.01; and two counts of kidnapping, in violation of 2905.01.
 {¶ 3} The evidence at trial established that the victims, 82-year-old Mary Mosberger and 77-year-old Loretta Fallat, lived together for thirty years in a home on Seymour Avenue in Cleveland. Mosberger's daughter discovered the murdered women on the afternoon of December 19, 1992, when she stopped by the house. The women had been beaten and stabbed multiple times. The victims were stripped and each had a butcher knife stuck in her chest.
 {¶ 4} The house was completely ransacked; the exterior and interior doors were kicked in and the telephone wires were cut. Mosberger's daughter noticed a violin, which once belonged to her daughter, was missing. She saw the violin in the victims' home a week earlier.
 {¶ 5} Mosberger's daughter had last spoken with her mother on the telephone the previous night around 8:00 p.m. Another relative had been with the women at their home around dinner time that same evening. At that time, she noticed Ferrell, who lived next door to the victims, was outside with a bunch of friends.
 {¶ 6} Ferrell was arrested a couple days later as a suspect. In his statement to police, he denied having anything to do with the murders and contended he was visiting friends and at a bar all night. He admitted that in early November he drove the victims to the bank to deposit their social security checks.
 {¶ 7} A fresh blood stain was found on the victims' outside door frame. The DNA matched Ferrell's. Ferrell explained the blood must have been from a fight with his brother he had earlier in the day, which occurred on the side of the victims' house. Because the police had no other evidence against Ferrell, he was released.
 {¶ 8} The case was reopened over the years in an attempt to discover new leads. It was not until 2002, however, when Steven Lenchak was arrested for several burglaries, that the detectives received a break in the case.
 {¶ 9} Lenchak, in an effort to receive a favorable plea bargain, told officers he had information on the murders. According to Lenchak, the morning after the murders, Ferrell came over to his house with a large quantity of crack cocaine, which they smoked. In 1998 or 1999, Ferrell threatened Lenchak by stating, "You better watch out, or you'll end up like those two old ladies." Ferrell than laughed and said he got away with murder. Over the years, Ferrell would threaten people, including Lenchak's mother, by stating he should kill them like he did "those two old ladies."
 {¶ 10} In 2001 or 2002, Ferrell told Lenchak, "we weren't trying to kill the two old ladies. If the bitches would have told us where the money was, they wouldn't be dead now." Ferrell clarified "we" meant him and his brother Tommy. Ferrell told Lenchak that his brother was out of control and started "slicing them," so he got "the hell out of there." Ferrell told Lenchak he got away with it because his blood was all over the side of the house due to an earlier fight with his brother.
 {¶ 11} As a result of this information, the detectives contacted neighbors who lived in the area at the time of the murders. Several of Ferrell's former friends from the neighborhood testified that, over the years, Ferrell threatened to kill people "like I did those old ladies." Several also recalled that Ferrell attempted to sell them a violin several days after the murders.
 {¶ 12} Bonnie Lewis, a home nurse, lived across the street from the victims and Ferrell. She did not know Ferrell or the victims well, but would exchange greetings with them. The morning prior to the discovery of the bodies, Ferrell approached her. He appeared to her to be high as his eyes were "totally glossed." Ferrell told her, "Nobody's going to have to put up with those old bitches again. We done `em in." She observed a bloodstain on his jacket and blood on his hand. When she inquired what he was talking about, he told her "I killed them." He stated, "we" broke down two doors and that it was difficult because the doors were barricaded. He said he took a butcher knife and cut Mosberger "real good" and then stripped the victims. Ferrell also told her he cut the phone line so that the women could not call anyone. Ferrell told Lewis they took some money, jewelry and an old instrument. Ferrell did not reveal the identity of his accomplice.
 {¶ 13} Because she was afraid, Lewis did not immediately call the police. Later, she saw police on the scene and learned from neighbors that the victims were killed. She told an officer at the scene she needed to talk and was told someone would be sent over. However, the police never contacted her. Lewis' abusive husband also ordered her to mind her own business. As a result, she did not pursue the matter.
 {¶ 14} Lewis finally came forward because a current patient of hers was a member of the victims' family. She overheard the family talking about the upcoming trial. When she revealed to them the information she had, the family asked her to contact the detective handling the investigation.
 {¶ 15} Jackie Harris, Ferrell's former girlfriend, testified that, about a year after the murders, she, Ferrell and his brother went inside the victims' house, which was vacant. Ferrell told her how the murders occurred. According to Harris, Ferrell found it humorous that the blood stains were still visible on the walls and floors. She stated that Ferrell threatened her during an argument by stating, "Do you want me to kill you like I did them two old ladies?" He made a similar threat to another former girlfriend, Glenna Beheler.
 {¶ 16} Jerrard Lunsford testified he was approximately twelve years old when the murders occurred. When he awoke the night of the murders around 1:00 a.m., he saw Timothy Montgomery, Ferrell's co-defendant, climbing over the victims' fence with "something shiny" in his hand. Lunsford stated Ferrell always "gave him a hard time" and repeatedly threatened to "dig a hole and put him in it." Ferrell threatened him a few weeks after the murders by stating, "he'd kill me like he did those two old ladies."
 {¶ 17} Frank Mave befriended Ferrell while in prison. Ferrell informed Mave "we were only supposed to rob those old ladies, but it didn't go like we planned. One of them recognized me." He then told Mave that the women were stabbed multiple times and knives were left in their bodies. He told Mave he took some jewelry, two violins and some money. Mave admitted he revealed this information in an attempt to receive a beneficial sentence.
 {¶ 18} Leo Longcoy was permitted to testify over defense objection. He testified he befriended Ferrell while in jail. Ferrell told him he did not kill the ladies, but only robbed them. He told Longcoy that the women were stabbed and struck with a brick and a two-by-four.
 {¶ 19} Sharon Malinowski testified at the time of the murders she was Ferrell's brother's girlfriend. The night of the murders, Ferrell dropped her off at work at 7:00 p.m. and picked her up at 2:30 a.m. She had given Ferrell a T-shirt for his birthday, which he was wearing when he dropped her off. She did not remember seeing the T-shirt after that.
 {¶ 20} Steven Lenchak's mother testified in Ferrell's defense. She claimed her son lied all the time and denied that Ferrell ever threatened to kill her like "those two old ladies."
 {¶ 21} The jury found Ferrell guilty on all counts. Thereafter, a mitigation hearing was conducted. The jury decided against imposing the death penalty. Ferrell received a sentence of life imprisonment without the possibility of parole. Ferrell now appeals and assigns seven errors for our review.
 Sufficiency of Evidence/Manifest Weight of the Evidence {¶ 22} Ferrell argues in his first and second assigned errors that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence, because the witnesses testifying against him were drug addicts and convicted felons and some of the witnesses did not come forward until years after the murders.
 {¶ 23} The standard of review with regard to the sufficiency of evidence is set forth in State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus, as follows:
 {¶ 24} "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
 {¶ 25} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of syllabus, in which the Ohio Supreme Court held:
 {¶ 26} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"
 {¶ 27} In contrast to a sufficiency-of-the-evidence argument, an argument based on manifest weight of the evidence requires an appellate court to determine whether the state appropriately carried its burden of persuasion. A court reviewing a question of weight is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial. A manifest-weight-of-the-evidence argument involves determining whether there exists a greater amount of credible evidence to support one side of an issue rather than the other. State v. Thompkins (1997),78 Ohio St.3d 380,387. It is not a question of mathematics, but depends on its effect in inducing belief. Id. A reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the factfinder clearly lost his or her way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Martin (1983), 20 Ohio App.3d 172, 175. A new trial is warranted only in the exceptional case where the evidence weighs heavily against the conviction. Id.
 {¶ 28} In the instant case, the evidence was sufficient to convict Ferrell. Lenchak, Lewis and Mave testified that Ferrell confessed to them that he killed the women and provided sufficient detail of how the women were killed, which matched the evidence found at the scene. Several other witnesses testified that, over the years, Ferrell threatened to kill them like he did "those two old ladies" and also recalled that Ferrell tried to sell a violin several days after the murders.
 {¶ 29} Although many of the witnesses against Ferrell were currently in prison, or had been in the past, the jury had been well apprised of this. Also, the testimony of those witnesses was extremely similar, which weighs in favor of their credibility. They all testified that Ferrell often threatened others by stating he should kill them like he did "those two old ladies," and they recalled he attempted to sell a violin or admitted to stealing the violin.
 {¶ 30} Bonnie Lewis, who lived across the street from Ferrell at the time of the murders, did not have a criminal past and had nothing to gain by testifying. Although after Ferrell first told her about killing the victims she was not sure she believed him, once she saw the police at the victims' home and learned of their murders, she knew it was true. She attempted to contact officers at that time, but stated the police never followed up on her request to talk with them. She failed to say anything regarding the crime for ten years because she was afraid.
 {¶ 31} Because the jury could have weighed these same credibility factors, we find Ferrell's convictions were not against the manifest weight of the evidence. Accordingly, Ferrell's first two assigned errors are overruled.
 Testimony of Witness not Provided on Witness List {¶ 32} Ferrell argues in his third assigned error that the trial court erred by permitting Leo Longcoy to testify over objection, when Longcoy was not listed on the state's witness list.
 {¶ 33} Crim.R. 16(E)(3) provides for the regulation of discovery in a criminal case and permits a trial court to exercise discretion in determining the appropriate sanction for a discovery violation. State v. Wiles (1991), 59 Ohio St.3d 71,78; State v. Parson (1983), 6 Ohio St.3d 442, 445; State v.Edwards (1976), 49 Ohio St.2d 31, 42. Crim.R. 16(E)(3) provides:
 {¶ 34} "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."
 {¶ 35} The Ohio Supreme Court has held when a prosecutor violates Crim.R. 16 by failing to provide the name of a witness, a trial court does not abuse its discretion in allowing the witness to testify where the record fails to disclose (1) a willful violation of the rule; (2) that foreknowledge would have benefitted the accused in the preparation of his or her defense; or (3) that the accused was unfairly prejudiced. State v.Heinish (1990), 50 Ohio St.3d 231, syllabus; see, also, Wiles,59 Ohio St.3d at 79; Parson, 6 Ohio St.3d 442, syllabus.
 {¶ 36} In the instant case, we conclude the trial court did not abuse its discretion in allowing Longcoy's testimony. First, there is no evidence the prosecutor willfully violated Crim.R. 16. A review of the record reveals the prosecutor was aware Longcoy wanted to testify several months earlier. However, because the prosecutor could not offer him a deal, he did not approach Longcoy for his statement. A week prior to trial, Longcoy's brother called to inform the prosecutor that Longcoy still desired to testify, even though a deal could not be offered. The prosecutor had Longcoy transferred to the county jail so that he could talk to him. The transfer occurred on the morning the prosecutor informed defense counsel of its desire to call Longcoy as a witness. Therefore, there was no bad faith because the prosecutor never intended to call Longcoy as a witness until after talking with him that morning.
 {¶ 37} Second, we do not believe that foreknowledge would have aided Ferrell in the preparation of his defense. Longcoy testified that Ferrell told him that he only robbed the victims and that he did not kill them. This testimony was cumulative because other witnesses testified that Ferrell admitted to robbing the victims.
 {¶ 38} Third, Ferrell has failed to show that he was unfairly prejudiced by the admission of the testimony. The trial court alleviated any prejudice that may have resulted by allowing defense counsel to cross-examine Longcoy prior to his testimony. Thus, no prejudice occurred.
 {¶ 39} Contrary to appellant's contentions, we find that the trial court did not abuse its discretion in allowing Longcoy's testimony. Accordingly, we overrule Ferrell's third assigned error.
 Ineffective Assistance of Counsel {¶ 40} Ferrell argues in his fourth assigned error that he was denied effective assistance of counsel because his attorney stipulated that Ferrell was incarcerated from January 24, 1992 until September 1, 1992. Ferrell argues this information, which was revealed to the jury, was prejudicial.
 {¶ 41} This court reviews a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Under Strickland, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance. State v. Bradley (1989),42 Ohio St.3d 136, paragraph one of syllabus. To show prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different. Id., at paragraph two of syllabus. Judicial scrutiny of a lawyer's performance must be highly deferential.State v. Sallie (1998), 81 Ohio St.3d 673, 674.
 {¶ 42} We find Ferrell's stipulation that he was incarcerated from January 1992 until September 1992 was not prejudicial. Because there was evidence that Ferrell had admitted killing the victims to different people during various times in his life, the fact he was incarcerated for less than a year was not prejudicial. The jury was never apprised as to the charges for which he was incarcerated. Several of the witnesses stated they met Ferrell while in prison; therefore, the jury was aware that he had been in prison. Accordingly, Ferrell's fourth assigned error is overruled.
 Prosecutorial Misconduct {¶ 43} Ferrell argues in his fifth and sixth assigned errors that the prosecutor engaged in misconduct during closing argument.
 {¶ 44} A prosecuting attorney's conduct during trial does not constitute grounds for error unless the conduct deprives the defendant of a fair trial. State v. Keenan (1993),66 Ohio St.3d 402-405; State v. Gest (1995), 108 Ohio App.3d 248, 257. The touchstone of a due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. Smith v. Phillips (1982),455 U.S. 209, 102 S.Ct. 940; 71 L.Ed.2d 78. The effect of the prosecutor's misconduct must be considered in light of the whole trial. State v. Durr (1991), 58 Ohio St.3d 86, 94; State v.Maurer (1984), 15 Ohio App.3d 239, 266. A prosecutor is afforded wide latitude during closing argument and it is within the trial court's sound discretion to determine whether a comment has gone too far. State v. Benge (1996), 75 Ohio St.3d 136.
 {¶ 45} Ferrell contends the prosecutor commented on Ferrell's failure to testify by stating, "Of course, Mr. Ferrell was not thoughtful enough to provide us with a video tape of his actions." Defense counsel objected to the comment. The trial court sustained the defendant's objection and later instructed the jury regarding sustained objections. A jury is presumed to follow the instructions of the trial court. State v. Loza
(1994), 71 Ohio St.3d 61, 79. Also, this comment did not reflect on Ferrell's failure to testify, but concerned the fact that the evidence of his involvement in the murder came from witness testimony regarding statements and threats Ferrell made to the witnesses and their recollection of his attempting to sell a violin days after the murders.
 {¶ 46} Ferrell also contends the prosecutor's comment that defense counsel did not call all the witnesses on its defense witness list also prejudiced him. In arguing this, he refers to the following comment made by the prosecutor:
 {¶ 47} "The only evidence to account for his whereabouts in that time frame is, as [appellant's trial counsel] got up and referred to his statement, his own statement, self-serving statement that he makes to the police two days later, in which he says he was at home with Tammy and Eileen and Tommy and whoever lived in that house. Where are those people?"
 {¶ 48} This statement was made in rebuttal to defense counsel's argument that Ferrell was with Sharon Malinowski, "Eddie," and "Eileen" and at the Barrel Inn during the time the murders occurred. It was not a comment on the failure to call witnesses who were on the witness list.
 {¶ 49} In sum, even if we found the comments were inappropriate, construing them in the context of the entire trial, we cannot find they prejudiced the jury's verdict, given the evidence against Ferrell. Accordingly, Ferrell's fifth and sixth assigned errors are overruled.
 Sentencing {¶ 50} Ferrell contends in his last assigned error that he was incorrectly sentenced under S.B. 2 sentencing laws. The state concedes this was error. Because the murders occurred prior to the imposition of S.B. 2, Ferrell should have been sentenced pursuant to the former statutory scheme. State v. Rush (1998),83 Ohio St.3d 53. Accordingly, this assigned error is sustained and the matter remanded for resentencing.
 {¶ 51} Judgment of conviction affirmed; sentence vacated and case remanded for resentencing.
It is ordered that appellee and appellant equally share costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court, however, for resentencing.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, P.J. and Gallagher, J., concur.