{¶ 38} I dissent from the majority's disposition of assignment of error IV: "The trial court improperly and to the prejudice of the appellant, instructed the jury that Voluntary Manslaughter was an `affirmative defense' to the charges of Aggravated Murder and Murder. This instruction was plain error and counsel was ineffective for failing to object to such as an incorrect and misleading instruction."
 {¶ 39} The majority gives short shrift to the facts in this case, omitting all of the facts that were elicited and tended to provide evidence in support of the crime of Manslaughter. In addition to the facts outlined by the majority, it is vital to know that appellant and the victim, Marcus Cox, were acquaintances. Prior to the night of the homicide in question, appellant had previously visited Cox's home. After one of these visits, appellant passed out, and awakened nude with some physical signs that led her to believe that she had been raped. She called a friend she described as her "brother" and awakened both him and his girlfriend. She was hysterical and reported to them that she believed she had been drugged and raped, but that she had no specific memory of the incident. Both of these witnesses testified as to this phone call at trial.
 {¶ 40} On the date in question, appellant and her girlfriend, Lynn Smith, went to Cox's house, where all the parties consumed alcohol. Appellant and Smith additionally smoked crack cocaine. Sometime during the evening, Cox revealed to Smith and appellant that on the previous occasion, Cox had, in fact, raped appellant and had gotten his dog to engage in bestial activity with her.
 {¶ 41} Lynn Smith testified, and it was unrebutted, that Smith and appellant were sexually involved with each other, and that although appellant was significantly older than Smith, Smith was the dominant member of the pair. She described and referred to herself as "the husband." Both Smith and appellant were outraged about the rape, and they became more so as Cox (apparently well-intoxicated at a .17 BAC) continued to taunt them about the dog and the rape. While taunting them, Cox lay down on a weight bench and began to lift weights. Appellant pinned Cox down with a weight bar, and Smith cut him with a box cutter, tentatively at first and then with ferocity. She then handed the box cutter to appellant, who also cut Cox.
 {¶ 42} After killing Cox, the women took some of Cox's personal belongings, and fled in his car. They were apprehended in Texas.
 {¶ 43} The issue before the jury was whether this was a revenge killing (and hence an Aggravated Murder or Murder), as alleged by the State; or whether this was a homicide committed in the heat of a passion reasonably sufficient to incite the offender into using deadly force (and hence a Voluntary Manslaughter), as alleged by the defense.
 {¶ 44} The State of Ohio in pretrial motion practice, opening statement and closing argument, acknowledged the defense's theory that this case could result in a verdict of Voluntary Manslaughter. While the rape had occurred some weeks previous, appellant had no knowledge that she was raped by Cox and was the victim of bestiality with the dog until the evening in question. The issue for jury determination was the intent
with which the homicide was committed: intentio mea imponit nomen operimeo (my intent gives name to my act).[1]
 {¶ 45} Defense counsel introduced the error complained of here in his final argument by referring to Voluntary Manslaughter as an affirmative defense. If this were an isolated reference, it might be argued that the jury was told that final arguments are not evidence, nor are they instructions of law. However, the Court then proceeded to misadvise and misinstruct the jury on this issue not once, but repeatedly. In fact, these instructions were reduced to writing and accompanied the jury into the deliberation room.
 {¶ 46} After defining Aggravated Murder to the jury, the Court then read the definition of affirmative defense, R.C. 2901.05(C), and stated:
{¶ 47} "The defendant is asserting an affirmative defense known asVoluntary Manslaughter.
 {¶ 48} "Burden: The burden of going forward with evidence of voluntarymanslaughter and the burden of proving an affirmative defense are uponthe defendant. She must establish such defense by a preponderance of theevidence.
 {¶ 49} "* * *
 {¶ 50} "Equally balanced: If the weight of the evidence is equallybalanced or if you are unable to determine which side of an affirmativedefense has the preponderance, then the defendant has not establishedsuch affirmative defense."
 {¶ 51} After this clearly erroneous statement of law, the Court then proceeded to charge Murder as a lesser and included offense of Aggravated Murder. It should be noted that not only was Manslaughter charged as an affirmative defense, it was never instructed as a lesser and included offense of any crime.
 {¶ 52} Despite the fact that the distinction between a revenge killing and a manslaughter was one of the seminal issues of the trial, the majority states that these instructions were error, but not prejudicial error. Lest there be any doubt that the jury did not hear or understand that Voluntary Manslaughter was being charged as a defense and not a crime, when the jury returned to the courtroom with the verdict forms, the forms read as follows: "Not Guilty of Aggravated Murder, Guilty of Murder, Not Guilty of Voluntary Manslaughter and Not Guilty of Aggravated Robbery." (Emphasis added). Obviously, had the jury understood Voluntary Manslaughter to be a lesser and included offense of Murder, they would never have reached the issue once the Murder conviction was achieved. To further remove any doubt of the jury's reliance upon the erroneous charge, contemporaneously with return of the verdict forms came a note from the jury which was preserved and made part of this record. The note read:
{¶ 53} "The jury's decision to vote Not Guilty on the defense ofvoluntary manslaughter indicates our rejection (emphasis of underlining as in the note) of the affirmative defense to the lesser included chargeof murder. JC (Initials used by this Court) Foreman
 {¶ 54} The Court inquired of the note at the time the verdict was returned, "Is this a question or a comment?" and the foreman replied, "It is a comment."
 {¶ 55} The majority concedes that this instruction is error, but emphasizes that it is error of the harmless variety. Specifically, at the separate concurring opinion, it states that "the dissent assumes the jury possesses a sophistication to the level of a legal degree in that it would know that the term "affirmative defense" is an absolute defense to murder." In short, the majority believes that the jury did not understand nor follow the instructions given to it by the court. That contention is wholly undone, not only by the note from the jury, but by voluminous and consistent Ohio Supreme Court case law that unequivocally states: "A jury is presumed to follow the instructions given to it by the trial court."State v. Loza (1994), 71 Ohio St.3d 61; State v. Ahmed, 103 Ohio St.3d 27,2004-Ohio-4190; State v. Twyford, 94 Ohio St.3d 340, 2002-Ohio-894. Over the past two years, this court has confirmed that premise in State v.Ficklin, Cuyahoga App. No. 84563, 2005-Ohio-1171; State v. Colbert,
Cuyahoga App. No. 84189, 2004-Ohio-6012; State v. Ferrell, Cuyahoga App. No. 83312, 2004-Ohio-5962; State v. Elko, Cuyahoga App. No. 83641,2004-Ohio-5209; State v. Charley, Cuyahoga App. No. 82944, 2004-Ohio-3463; and State v. West, Cuyahoga App. No. 82579, 2003-Ohio-7067.
 {¶ 56} The majority then goes on to argue that the fact that the court upheld an objection to the State's use of the word "justification" during final argument should have clearly signaled to the jury that Manslaughter is not a defense (i.e., "justification") for a homicide. This particular argument, however, is likewise undone by the court's instruction to the jury that "you must not speculate as to why I sustained an objection, nor can you speculate as to what you think the answer to that question would have been." The jury was specifically instructed not to draw conclusions from the judge's ruling on objections — yet the majority contends that the jury could rightfully conclude from the judge's sustaining an objection that this murder could not be "justified" and hence the erroneous instruction was harmless. The jury was further instructed that "it is your duty to accept the law as given by me." The majority's position that the jury either disregarded the erroneous instructions of law, or that they did not understand them, and hence there was no error, is most egregious sophistry.
 {¶ 57} In short, the jury was charged, both in writing and orally, that Voluntary Manslaughter is a defense to Murder that must be proved by the defendant. It goes without citation to say that it is not. The jury clearly understood this instruction of the court, as the note indicates. The issue of "revenge killing" versus "provoked killing" was the seminal issue of the entire trial. Voluntary Manslaughter is not a defense, it is a crime; the burden of proof of a crime is not upon the defendant, it is upon the State; the error is plain; the error is prejudicial; the trial was wholly flawed; and this matter should be reversed, remanded and retried
[1] The prosecutor stated, "The key part about this whole trial, I guess, if I can summarize it, is that the events in question occurred that resulted in death of Marcus Cox and what was the intent of the actor? What was the level of knowledge at the time she committed the crime? Was this premeditated? Was this purposeful? Was this committed in the heat of passion or a sudden fit of rage?" Tr. at 212.